**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE**

| | |
|---|---|
| CRYSTAL HAMILTON,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civil No. 18-15687 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**APPEARANCES:**

POLONSKY & POLONSKY ATTORNEYS AT LAW
By: Alan H. Polonsky, Esq.
512 S. White Horse Pike
Audobon, New Jersey 8106
    Counsel for Plaintiff Crystal Hamilton

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Evelyn Rose Marie Protano, Special Assistant U.S. Attorney
300 Spring Garden Street, 6th Floor
Philadelphia, Pennsylvania 19123
    Counsel for the Commissioner of Social Security

1

**RENEE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal filed by Plaintiff Crystal Hamilton ("Plaintiff"), seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner"), which denied Plaintiff's applications for disability insurance benefits and supplemental social security income. For the reasons set forth herein, the Court **VACATES** the decision of the Administrative Law Judge and **REMANDS** for proceedings consistent with this Memorandum Opinion.

I.  **PROCEDURAL HISTORY**

On April 4, 2014, Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging a severe disability due to bi-polar disorder, depression, and post-traumatic stress disorder, with an alleged onset of December 31, 2012.

Plaintiff's claim was initially denied on August 29, 2014, and again upon reconsideration on November 13, 2014. Thereafter, Plaintiff requested a hearing, which was held before Administrative Law Judge Brian LeCours (the "ALJ") on May 8, 2017. At the hearing, Plaintiff was represented by an attorney, Steven M. Leder, Esq. The ALJ also heard testimony from

Plaintiff's friend, Shawn Michaels, and an impartial vocational expert, Connie Louise Standhart.

On June 29, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits, based upon his finding that Plaintiff was not disabled and could perform work in representative occupations, such as hand packager, laundry worker, housekeeping cleaner, or routing clerk. [R.P. at 27]. On September 7, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as final. Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

When reviewing an ALJ's final decision regarding disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Hess v. Comm'r Soc. Sec., 931 F.3d 198, n. 10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 372 (3d Cir. 2009).

3

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Hess, 931 F.3d at n. 10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden

4

of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Recently in Hess, 931 F.3d at 201–02, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of this analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on February 27, 1969, was 43 years old on the alleged onset date and 48 years old at the time of her administrative hearing. [See R.P. at 77]. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, meaning that Plaintiff must establish disability on or before that date to be entitled to benefits.

#### A. *Plaintiff's Educational and Work History*

Plaintiff has a high school degree and attended a technical school, where she obtained a certificate to work as a "help desk analyst." [R.P. at 41-42]. Plaintiff attended some college, but did not graduate. From 1998 to 2002, Plaintiff worked as a help desk analyst at a company, where she performed troubleshooting of their software programs. Following that position, Plaintiff worked as a legal assistant at various law

6

firms from 2002 to 2011. As a legal, Plaintiff stated that she primarily handled scheduling and data entry for attorneys. Although Plaintiff obtained some work through temp agencies from 2012 to 2014, she has not worked full time since 2011.

### B. *Plaintiff's Medical History*

At the administrative hearing, Plaintiff testified that her psychological problems are the primary basis for her alleged inability to work. [R.P. at 45]. Specifically, Plaintiff suffers from bipolar disorder, depressive disorder, anxiety disorder, and alcohol abuse disorder. Plaintiff also has physical impairments, such as degenerative disc disease of the lumbar spine and a left foot fracture, but Plaintiff testified that these physical issues "don't seem to be as bad now." [Id.].

According to Plaintiff's medical records, Plaintiff has a "long history" of bipolar disorder, alcohol dependence, and "bouts of depression alternating with hypomanic episodes." [R.P. at 482]. When Plaintiff was 15 years old, she attempted suicide by cutting her wrists. Plaintiff indicated that she began significant alcohol consumption at age 14 and, at times, has consumed up to two liters of vodka per day. Plaintiff's medical records reflect inpatient rehabilitation/hospitalizations at various facilities in 2001, 2006, 2007, 2010, 2011, and 2013 [R.P. at 498, 670]. Plaintiff testified that she has struggled

7

to stay sober for anything more than a few months at a time. Plaintiff has been prescribed various medications for her mental health problems, including Seroquel, trazodone, topiramate, buspirone, hydroxyzine, fluoxetine, ReVia, and Nexium.

Plaintiff testified that some of her mental health issues stem from, or were triggered by, traumatic experiences in her life, including a sexual assault, the sudden death of her fiancé, and an abusive relationship with an ex-boyfriend. Plaintiff testified that she suffers from anxiety due to fear of stalking and other physical harm from her ex-boyfriend. According to Plaintiff, her anxiety impairs her ability to interact with other people. Shawn Michaels testified that Plaintiff's anxiety and mood swings contributed to the end of his romantic relationship with Plaintiff.

### C. *The ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time from the alleged onset date through the date of the decision. Upon consideration of the evidence in the record, the ALJ determined that Plaintiff had a Residual Functional Capacity ("RFC") to perform a "full range of work at all exertional levels," but only work consisting of unskilled tasks, requiring little or no judgment, with no more

than occasional interaction with the general public. [R.P. at 23].

At Step One of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2012. [R.P. at 20]. At Step Two, the ALJ determined that Plaintiff's "bipolar disorder, depressive disorder, anxiety disorder, and alcohol abuse disorder" were severe impairments. [Id.]. The ALJ concluded, however, that Plaintiff's degenerative disc disease of the lumbar spine and left foot fracture were non-severe impairments, because "there is no link in the documentary evidence between them and any significant work-related limitation." [R.P. at 21].

At Step Three the ALJ determined that Plaintiff did not have an impairment that meets or was medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id.]. In reaching this determination, the ALJ considered listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.15 (trauma and stressor-related disorders), and SSR 13-2p (Evaluating Cases Involving Drug Addiction and Alcoholism ("DAA")).

At Step Four, the ALJ found that the Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the work must consist of unskilled tasks[,] work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; and, there can be no more than occasional interaction with the general public, coworkers, and supervisors." [R.P. at 23]. In making this decision, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Id.].
Although the ALJ found that Plaintiff's mental health issues eroded her ability to perform some types of work, he concluded that "the medical evidence and other evidence of record suggest that the claimant can sustain a greater capacity of physical and mental work related activity than she described at the hearing." [R.P. at 25]. However, the ALJ also found Plaintiff was unable to perform any past relevant work because her "prior employment requires a higher exertional level than the residual functional capacity assessed for the claimant allows." [R.P. at 26].

Finally, at Step Five, the ALJ held that, considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant

10

numbers in the national economy that the [she] can perform." [R.P. at 26]. After posing a series of hypotheticals to the vocational expert during the administrative hearing, the ALJ determined that Plaintiff would be able to perform the requirements of representative occupations, such as "Hand Packager," "Laundry Worker," "Housekeeping Cleaner," or "Routing Clerk." Based on this finding, the ALJ concluded that Plaintiff was not disabled under the Act from the alleged onset date, through the date of the decision.

## IV. **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence because the ALJ: (1) improperly discounted the weight of an evaluation from Plaintiff's treating nurse practitioner in formulating the RFC; and (2) failed to address contradictory testimony from vocational expert when evaluating whether Plaintiff could work in the representative occupations. As a result of these alleged deficiencies, Plaintiff argues that the ALJ's conclusion, that Plaintiff was not disabled under the Act, was not supported by substantial evidence. The Court agrees with Plaintiff on both points.

### A. RFC Formulation

First, Plaintiff argues that the ALJ inappropriately discounted the opinion of a treating nurse practitioner, Carolyn Cooper, in formulating the RFC. Specifically, Plaintiff argues that the ALJ failed to give proper weight to Nurse Cooper's answers provided in a "Medical Source Statement of Ability to do Work-Related Activities" (the "Medical Source Statement") regarding Plaintiff's mental health impairments. Upon review, the Court finds that additional discussion and clarification of Nurse Cooper's opinion would be beneficial on remand.

In the Medical Source Statement, completed in December 2016, Nurse Cooper indicated that Plaintiff had "marked" limitations in (1) understanding and remembering both simple and complex instructions; (2) ability to make judgments on simple work-related decisions; (3) carrying out complex instructions; (4) interacting appropriately with the public and co-workers; and (5) responding appropriately to usual work situations and to changes in routine and work setting. [R.P. at 703-704]. Nurse Cooper also indicated that Plaintiff had "extreme" limitations in her ability to make judgments on complex work-related decisions. [R.P. at 704]. Nurse Cooper explained her determinations were based on her observations that Plaintiff "has a difficult time adjusting and coping in settings of more

12

than 5 people. She is easily triggered by loud voices, doors closing, traffic sounds and unpleasant conversations which prompt flashbacks of post traumatic events." [Id.]. Nurse Cooper added that Plaintiff's "mental health disorder has caused great emotional imbalance, ambivalent attachment and interferes with her capacity to make quality decisions." [Id.].

The ALJ's decision does not address Nurse Cooper's evaluation until Step Four of the sequential analysis, at which point the ALJ stated that Nurse Cooper's "opinion is inconsistent with the generally normal mental status examination findings at the consultative examination, the claimant's reported activities of daily living, and this provider's own records." [R.P. at 24-25]. As such, the ALJ stated that he was giving Nurse Cooper's opinion "little weight." [R.P. at 25].

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(internal citations omitted).

In the decision, the ALJ stated that he discounted the weight of Nurse Cooper's opinion based on contradictory evidence

13

from a consultative examination with Dr. Victoria Miller, Ph.D. in August 2014 and Plaintiff's reported activities of daily living. However, the ALJ does not clarify what specific aspects of Dr. Miller's evaluation or activities of daily living contradict Nurse Cooper's opinion. Furthermore, the Court finds that the ALJ's overall RFC analysis is, by and large, conclusory and deficient in nature, without helpful or productive discussion of how the ALJ reached the elements of the final RFC determination. Accordingly, on remand, the ALJ must include a more thorough RFC analysis, including a discussion Nurse Cooper's evaluation and specific reasons for discounting her opinions.

### B. *Use of Vocational Expert's Testimony*

Second, Plaintiff contends that the ALJ erred in finding that Plaintiff's RFC would allow her to perform work in several representative occupations. Specifically, Plaintiff points to conflicting testimony from the vocational expert at the administrative hearing. Upon review, this Court finds that the vocational expert contradicted herself during her testimony, and the ALJ neither sought clarification at the hearing nor distinguished the vocational expert's statements in his decision.

At the administrative hearing, the ALJ posed a series of hypotheticals to the vocational expert based on a scenario in which a person with no exertional limitations could perform "unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time" and "there can be occasional interaction with the general public, coworker and supervisors."  Based on this hypothetical, the vocational expert opined that the Plaintiff would be unable to perform past relevant work, but suggested that jobs such as hand packager, laundry worker, housekeeping cleaner, or routing clerk, would be available in the national economy.

After the ALJ finished his hypotheticals, Plaintiff's attorney asked the vocational expert whether the jobs would still be available in the national economy if the hypothetical person "would have difficulties interacting appropriately with the public, supervisors and coworkers, or responding to changes in the work setting."  The vocational expert responded that such limitations "would rule out all jobs."  At no point did the ALJ seek clarification from the vocational expert about distinction between Plaintiff's attorney's hypothetical and the ALJ's earlier hypothetical.

This Court finds that the ALJ's RFC finding, which requires "little or no judgment to do simple duties that can be learned on the job in a short period of time" and "no more than occasional interaction with the general public, coworkers, and supervisors," is virtually indistinguishable from the hypothetical posed by Plaintiff's attorney, which noted "difficulties interacting appropriately" and "difficulties responding to changes in work setting." This distinction is even more tenuous given that the ALJ had noted at Step Three of the sequential evaluation that Plaintiff has "moderate difficulties" with "understanding remembering, or applying information, interacting with others, and concentration, persistence, and maintaining pace." [R.P. at 22]. The ALJ's finding is further muddled by a failure to address this aspect of the vocational expert's testimony at all in the decision. On remand, the ALJ must clarify how "no more than occasional interaction with the public, supervisors and coworkers," does not necessarily imply "difficulties interacting appropriately" with those individuals.

## V.     CONCLUSION

Because the ALJ failed to adequately explain his reasons for discounting the weight of Nurse Cooper's evaluation and did not seek clarification regarding the vocational expert's seemingly contradictory testimony, the Court cannot determine

16

whether the ALJ's decision is supported by substantial evidence. Although there may be evidence that, ultimately, supports the ALJ's conclusion, there are significant deficiencies in the ALJ's opinion that must be addressed on remand.

**ACCORDINGLY**, **IT IS** on this **21st** day of **November 2019**, hereby

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE
